IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MICHAEL JOHNSON, # B-64071,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 15-cv-00344-SMY |
| | ) |
| **VIPIN K. SHAH,** | ) |
| **CHRISTINE BROWN,** | ) |
| and **ANGEL RECTOR,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Michael Johnson, an inmate who is currently incarcerated at Lawrence Correctional Center ("Menard"), brings this action for the deprivation of his constitutional rights under 42 U.S.C. § 1983. Plaintiff claims that during his incarceration at Pinckneyville Correctional Center ("Pinckneyville") in 2013, he was denied adequate medical care for an H. pylori infection. For five months, he endured painful and persistent symptoms before he was properly diagnosed and treated. Plaintiff now sues three Pinckneyville officials, Vipin Shah (medical director), Christine Brown (health care unit administrator), and Angel Rector (nurse practitioner), for responding to his requests for treatment with deliberate indifference in violation of the Eighth Amendment. He seeks declaratory judgment and monetary damages.

### Merits Review Under 28 U.S.C. § 1915A

This matter is now before the Court for preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court must dismiss

any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). The complaint survives preliminary review under this standard.

## The Complaint

For a period of nearly five months in 2013, Plaintiff suffered from a broad range of symptoms, including hypertension, high cholesterol, severe stomach pains, bloating, fatigue, diarrhea, constipation, gastrointestinal distress, vomiting, insomnia, acne, rashes, depression, heartburn, nausea, and acid reflux (Doc. 1, pp. 5-6, 8). These symptoms occurred on a daily basis and typically increased in severity after meals.

On June 2nd, Plaintiff submitted a request for an appointment in Pinckneyville's health care unit ("HCU"). After twelve days without a response, Plaintiff protested by surrendering all of his medications (Doc. 1, pp. 8-9). He refused to take more until he was seen in the HCU.

On June 18th, Doctor Shah met with Plaintiff (Doc. 1, p. 8). But instead of discussing Plaintiff's symptoms, Doctor Shah would only discuss Plaintiff's refusal to take his medications. He told Plaintiff to "put in for (nurse sick call)," if Plaintiff wanted to address any other health care concerns (*Id.*).

Therefore, on June 20th, Plaintiff submitted a nurse sick call request, in which he reiterated his request for treatment (Doc. 1, p. 9). Plaintiff subsequently met with several nurses, who are not named as defendants in this action. The nurses would not provide him with pain medication for the remainder of that week.

Plaintiff submitted two additional sick call requests on July 3rd and July 14th. Nurse Little, who is also not named as a defendant in this action, met with Plaintiff on July 16th.

After hearing about his symptoms, Nurse Little advised Plaintiff to speak with the nurse practitioner. Plaintiff was provided with no medication to treat his underlying condition or symptoms at that time (Doc. 1, p. 10).

On July 24th, Plaintiff directed a letter and a request for treatment to HCU Administrator Brown and Nurse Practitioner Rector (Doc. 1, p. 11). In the letter, Plaintiff described his symptoms and health complications in detail. During this same time period, Plaintiff's condition grew worse. He began complaining to the nurses in the medical line. He requested pain medication for his stomach pain. Plaintiff's blood pressure spiked, allegedly because of his persistent pain.

Plaintiff again met with Doctor Shah on July 30th to discuss his stomach pain and hypertension. Once again, Doctor Shah refused to discuss Plaintiff's symptoms. Instead, he focused on Plaintiff's hypertension.

In July and August, Plaintiff conducted his own research to self-diagnose his condition (Doc. 1, p. 12). Based on this research, Plaintiff suspected that he was suffering from thyroid dysfunction, and he requested a blood test (Doc. 1, p. 6; Doc. 1-1, pp. 9-10). Plaintiff also suspected a soy allergy; instead of a soy allergy test, however, he requested a soy-free diet (Doc. 1, p. 5; Doc. 1-1, pp. 9-10, 13-14). The request for a soy-free diet was denied[1] (Doc. 1, p. 7; Doc. 1-1, p. 10). He then reached out to other individuals, such as the nurses in the medical line, the statewide medical director, and officials at Wexford Health Sources, Inc. (Doc. 1, pp. 12-13).

---

[1] Although the exhibits occasionally refer to Plaintiff's religious beliefs in conjunction with his request for a soy-free diet, the complaint raises no independent claim against the defendants on the basis of religion (Doc. 1, pp. 5-6; Doc. 1-1, pp. 9-10, 13-14). Rather, Plaintiff's religious fast, which coincided with a decrease in his symptoms, led him to the conclusion that he suffered from a soy allergy and triggered his request for a soy-free diet (Doc. 1-1, pp. 13-14).

On August 20th, Plaintiff again wrote a letter to Nurse Practitioner Rector (Doc. 1, p. 13). He described his symptoms and repeated his request for treatment. He met with Nurse Practitioner Rector on August 29th and again on September 12th. In addition to discussing his hypertension, Plaintiff discussed his other symptoms with Nurse Practitioner Rector. These symptoms included stomach pain, vomiting, and diarrhea (Doc. 1, p. 13). She said that it was a "good thing" that Plaintiff was having frequent bowel movements, and she recommended a change in his diet to eliminate the diarrhea. Plaintiff's subsequent requests for medical treatment were ignored.

Finally, on October 1st, Plaintiff was called in to see Doctor Shah (Doc. 1, p. 14). For the first time in five months, Doctor Shah allowed Plaintiff to discuss his symptoms. After hearing Plaintiff describe them, Doctor Shah ordered a blood test and prescribed Plaintiff medication. On October 11th, Plaintiff learned that he was suffering from H. pylori infection.

Plaintiff now contends that the five month delay in treatment exacerbated his symptoms and caused his condition to worsen. As a result, treatment has been difficult. As of the date he filed this action on March 30, 2015 (seventeen months after his diagnosis with H. pylori), Plaintiff was still undergoing treatment.

He now sues Defendants Shah, Brown, and Rector for responding to his requests for treatment with deliberate indifference, in violation of the Eighth Amendment. Plaintiff seeks declaratory judgment and monetary damages (Doc. 1, pp. 17-18).

## Discussion

The complaint states an Eighth Amendment deliberate indifference to medical needs claim (**Count 1**) against Defendants Shah, Brown, and Rector for delaying the diagnosis and treatment of Plaintiff's H. pylori infection and related symptoms. Relative to this claim, the

Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). Deliberate indifference involves a two-part test. The plaintiff must show that: (1) the medical condition was objectively serious; and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard. *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

With regard to the objective component of this test, the Seventh Circuit has held that a medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) the "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) the "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez,* 111 F.3d at 1373.

At this early stage, the complaint suggests that Plaintiff was suffering from a serious medical condition. Plaintiff's reference to "h. pylori" presumably refers to helicobacter pylori (H. pylori). According to the Centers for Disease Control, H. pylori is a bacteria that is found in almost two-thirds[2] of the world's population. *See Helicobacter Pylori and Peptic Ulcer Disease—The Key to Cure,* Centers for Disease Control, Division of Bacterial Diseases,

---

[2] An informational page filed with the complaint indicates that H. pylori is present in approximately one-half of the world's population, not two-thirds (Doc. 1-1, p. 56). Nevertheless, H. pylori affects a large percentage of the population.

http://www.cdc.gov/ulcer/keytocure.htm (last visited April 22, 2015). In many individuals, it causes no symptoms. *Id.* In some, however, H. pylori infection can cause gastritis and ulcers. Infected individuals also have an increased risk of developing gastric cancer and a type of lymphoma. *Id.* Although the presence of H. pylori, without more, may not rise to the level of a serious medical need, Plaintiff also complained of other symptoms of infection.

These symptoms included stomach pain, bloating, fatigue, diarrhea, constipation, gastrointestinal distress, vomiting, insomnia, acne, rashes, depression, heartburn, nausea, and acid reflux, among other things (Doc. 1, pp. 5-6). Severe and persistent pain can constitute a serious medical need. *See Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002). Plaintiff's many symptoms, which included severe pain and occurred daily over a period of five months, are also suggestive of serious medical need.

The complaint also suggests that the defendants exhibited deliberate indifference to Plaintiff's need for treatment. Deliberate indifference is shown "when a defendant realizes that a substantial risk of serious harm to the prisoner exists, but the defendant disregards that risk." *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). The Seventh Circuit has made it clear that "[n]either medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference in violation of the Eighth Amendment." *Id.* at 440 (citing *Estelle*, 429 U.S. at 106; *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)). At the same time, Plaintiff is not required to show that he was "literally ignored." *Id.* (citing *Sherrod*, 223 F.3d 605, 611 (7th Cir. 2000)). A doctor's choice of the "easier and less efficacious treatment" can support a deliberate indifference claim under the Eighth Amendment. *Id.* (citations omitted).

The allegations suggest that all three defendants may have exhibited deliberate indifference toward Plaintiff. According to the complaint, Defendant Shah "literally ignored" Plaintiff's numerous requests for treatment over a period of five months before finally administering a diagnostic blood test and treatment for the infection. *Id.* Similarly, Defendant Rector received written requests for treatment from Plaintiff and met with him, but took no steps to diagnose or treat his condition. Plaintiff also sought a diagnosis and treatment from Defendant Brown, who allegedly ignored his requests. All the while, Plaintiff's condition grew worse and has been more difficult to treat as a result of the delay in diagnosing the infection. A medical provider's undue delay or absolute failure to provide treatment may constitute deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Sherrod*, 223 F.3d at 619; *Gutierrez*, 111 F.3d at 1373. At this early stage, the Court will allow Plaintiff to proceed with **Count 1** against all three defendants.

However, Count 1 shall be limited to individual capacity claims against each defendant. Although Plaintiff also sues all three defendants in their official capacities, the complaint does not support an official capacity claim against any of them. Such claims are typically brought when a plaintiff seeks injunctive relief, which Plaintiff does not seek in this case. *See Luder v. Endicott*, 253 F.3d 1020, 1024 (7th Cir. 2001) ("state officials may be sued in their official capacity for injunctive relief against violations of federal law, including of course nonconstitutional as well as constitutional violations"). Official capacity claims are also raised when a constitutional deprivation results from an official policy, custom, or practice, and no such claim is raised in this case. *Monell v. Dept. of Social Serv. of the City of New York*, 436 U.S. 658, 691 (1978). Subject to this limitation, Plaintiff shall be allowed to proceed with his individual capacity claims against Defendants Shah, Brown, and Rector in **Count 1**.

**Pending Motion**

Plaintiff has filed a motion for service of process at government expense (Doc. 3), which is hereby **GRANTED**.

**Disposition**

**IT IS HEREBY ORDERED** that the **OFFICIAL CAPACITY** claims in **COUNT 1** against Defendants **SHAH, BROWN,** and **RECTOR** are hereby **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**AS TO THE INDIVIDUAL CAPACITY CLAIMS IN COUNT 1**, the Clerk of Court shall prepare for Defendants **SHAH, BROWN,** and **RECTOR**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is

entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings.  Further, this entire matter shall be **REFERRED** to a **United States Magistrate Judge Frazier** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* has been granted.   *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk

of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 4, 2015**

                                                **s/ STACI M. YANDLE**
                                                **United States District Judge**