# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-cv-344-SMY-RJD |
| | ) |
| VIPIN K. SHAH, CHRISTINE BROWN, | ) |
| and WEXFORD HEALTH SOURCES, | ) |
| INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Michael Johnson, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). Specifically, Johnson alleges that he was denied adequate medical care for his Helicobacter Pylori ("H. Pylori") infection. He is proceeding on the following claims:

Count One: Claim of deliberate indifference to medical needs against Defendants Vipin Shah and Christine Brown, and against Wexford Health Sources, Inc. ("Wexford") for instituting a policy, custom, or practice in violation of the Eighth Amendment's proscription against cruel and unusual punishment; and

Count Three[1]: State law claim against Wexford for breach of its contractual duty to provide adequate medical services to inmates held in the custody of the Illinois Department of Corrections. Plaintiff asserts rights as a third-party beneficiary.

---
[1] Count Two was dismissed during the Court's threshold review.

This matter is now before the Court on the Motion for Summary Judgment filed by Defendants Shah and Wexford (Doc. 100), and the Motion for Summary Judgment filed by Defendant Brown (Doc. 109). Plaintiff filed timely responses to Defendants' Motions (Docs. 114-115), and Defendants were granted leave to file reply briefs (Docs. 117 and 122). For the following reasons, the Motion for Summary Judgment filed by Defendants Shah and Wexford is **GRANTED IN PART AND DENIED IN PART**, and the Motion for Summary Judgment filed by Defendant Brown is **GRANTED**.

### Affidavits of Vipin Shah, M.D. and Christine Brown

In response to Defendants' Motions, Plaintiff asks the Court to disregard or strike the affidavits submitted by Defendant Shah[2] and Defendant Brown. With regard to Shah's affidavit, Plaintiff contends that Dr. Shah improperly interprets Plaintiff's medical and other records, because he was never disclosed as an expert witness and the records speak for themselves. Plaintiff also argues that portions of Shah's affidavit conflict with his sworn deposition testimony and, due to the inconsistencies, must be disregarded.

The Court has reviewed Shah's affidavit and finds that he adequately sets forth his qualifications to appropriately review and interpret Plaintiff's medical records. Significantly, Shah does not express expert opinions concerning the adequacy or appropriateness of the treatment Plaintiff received. Accordingly, Shah's affidavit will not be stricken on this basis. However, insofar as Shah's affidavit conflicts with any portion of his sworn deposition testimony, the affidavit will be disregarded. *See Russell v. Acme-Evans Co.*, 51 F.3d 64, 67-68 (7th Cir. 1995) ("Where deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken …").

---

[2] The Court notes that the introductory paragraph of Shah's Affidavit (Doc. 101-2) references James Fenoglio, M.D. This appears to be a clerical error and does not affect the Court's reading of the affidavit.

Plaintiff also seeks to strike, in its entirety, the affidavit of Defendant Brown. Plaintiff asserts that Brown's affidavit contains improper opinions regarding Plaintiff's medical and grievance records, contradicts Brown's prior sworn testimony, and includes numerous paragraphs that are not cited in Brown's statement of facts. The Court, over Plaintiff's objections, will consider those portions of the affidavit that are cited in Brown's statement of facts. No cited portion of Brown's affidavit appears to offer improper expert testimony, thus, no portion will be stricken on this basis. However, as previously noted, in regards to Dr. Shah's affidavit insofar as Brown's affidavit conflicts with any portion of her sworn deposition testimony, the affidavit will be disregarded.

## Factual Background

### *Plaintiff's Medical Treatment*

Michael Johnson was incarcerated at Pinckneyville from January 2013 until October 2014 (Deposition of Plaintiff, Doc. 101-6, p. 3; Plaintiff's Medical Records, Doc. 101-1, p. 40). In April 2013, Johnson began experiencing vomiting, nausea, bloating, and diarrhea after every meal (Doc. 101-6 at 3). Johnson alleges that he advised Defendant Dr. Shah of his abdominal issues when he saw him for an unrelated medical condition on May 7, 2013 and June 18, 2013 (*Id.* at 4; *see* Doc. 101-1 at 1, 4). In response, Dr. Shah told Johnson to "put in for nurse sick call," as only one ailment could be treated at a time (Doc. 101-6 at 4, 12, 14-15). In his deposition, Dr. Shah testified that Johnson did not complain of any stomach ailments on these dates as they would have been documented in Johnson's medical records (and no such complaints were recorded) (Deposition of Vipin Shah, Doc. 101-3, p. 32).

Abdominal pain is first documented in Johnson's medical records on July 16, 2013, when he presented to Nurse Sick Call (Doc. 101-1 at 6). On that date, Johnson reported that he was no

longer experiencing abdominal issues since he began fasting for Ramadan (Doc. 101-2 at ¶ 12; *see* Doc. 101-1 at 6-7).  The nurse did not refer Johnson for an evaluation with a nurse practitioner or physician, but recommended that he eat properly, increase his fluid intake, and return if he experienced ongoing complaints (*Id.*).

On July 30, 2013, Johnson was evaluated by Shah as part of the hypertension chronic care clinic (Affidavit of Vipin Shah, M.D., Doc. 101-2, ¶ 13; *see* Doc. 101-1 at 8).  On physical examination, Dr. Shah noted that Johnson's abdomen was soft, non-tender, and "without mass" (*Id.*).  Johnson contends that he reported complaints of abdominal distress during this exam, but Dr. Shah asserts that no such complaints were made (Doc. 101-6 at 4; Doc. 101-2 at ¶ 13).

Johnson was next seen on August 29, 2013, by Nurse Practitioner Rector, complaining of issues with food, headaches, and fatigue (*Id.* at ¶ 15; *see* Doc. 101-1 at 9).  Johnson requested a thyroid test, which NP Rector ordered (*Id.*).  Johnson returned for a follow-up exam with NP Rector on September 12, 2013 (Doc. 101-2 at ¶ 17; *see* Doc. 101-1 at 11).  During this appointment, Johnson again complained of abdominal issues.  His physical exam was normal, aside from concern of trace pedal edema (swelling of Johnson's lower extremities related to his hypertension) (*Id.*).

Johnson was examined by Dr. Shah on October 1, 2013, to address his complaints of abdominal pain with bloating, excessive gas, bowel movements after every meal, and occasional vomiting (Doc. 101-2 at ¶ 18; *see* Doc. 101-1 at 12-13).  Dr. Shah conducted a physical examination and noted that his abdomen was soft and non-tender, but that he had a superficial hemorrhoid (*Id.*).  Dr. Shah ordered various blood tests, including a comprehensive metabolic panel, an H. Pylori screening, and a soy allergy test (*Id.*).  He also prescribed Bentyl (an antispasmodic medication for his stomach), and directed Johnson to return in one month (*Id.*).

The laboratory testing was completed on October 4, 2013, and revealed an H. Pylori exposure value of 10.8, (values of 2.3 or greater suggest a previous exposure to H. Pylori or a current infection) (Doc. 101-2 at ¶ 19; *see* Doc. 101-1 at 15).

Dr. Shah conducted a follow-up exam with Johnson on October 11, 2013 (Doc. 101-2 at ¶ 21; *see* Doc. 101-1 at 20). Based on the results of his blood tests, Dr. Shah diagnosed Johnson with H. Pylori[3] and prescribed various medications, including Biaxin or Clarithromycin (antibiotics used to treat stomach ulcers caused by H. Pylori), Amoxicillin (an antibiotic used to treat H. Pylori stomach ulcers), Protonix (a protein inhibitor used to treat excessive stomach acid), Pepto-Bismol, and hemorrhoid cream (*Id.*). Johnson was to return in three weeks for re-evaluation (*Id.*). Johnson next saw Dr. Shah during his routine hypertension appointment on November 1, 2013 (Doc. 101-2 at ¶ 23; *see* Doc. 101-1 at 22). It is disputed whether Johnson complained about his stomach problems again on this date (Doc. 101-6 at 4; Doc. 101-2 at ¶ 23).

Johnson saw Dr. Shah for a follow-up on November 7, 2013 related to his H. Pylori diagnosis (*Id.* at ¶ 24; *see* Doc. 101-1 at 23). He reported he was feeling better and Dr. Shah directed Johnson to continue taking Protonix (*Id.*). Dr. Shah also ordered Johnson a fecal blood occult to be performed in one month (*Id.*). The fecal blood occult was performed in December 2013, and produced a positive result for fecal blood (Doc. 101-2 at ¶¶ 25-27; *see* Doc. 101-1 at 24-25).

Johnson again followed-up with Dr. Shah on December 5, 2013 regarding his recent stool testing (Doc. 101-2 at ¶ 28; *see* Doc. 101-1 at 26). He complained of stomach pain, acid reflux type symptoms, and diarrhea after meals (*Id.*). Dr. Shah determined that Johnson was suffering from gastroesophageal reflux disease ("GERD") (*Id.*). Based on this assessment, Dr. Shah

---

[3] H. Pylori is a bacteria in the stomach that can cause ulcers and presents with stomach pain and bloating (Deposition of Christine Brown, Doc. 101-5, p. 17; Doc. 101-3 at 28).

prescribed Zantac (heartburn relief medication), and ordered additional laboratory work, including another H. Pylori screening (*Id.*). The laboratory testing was completed on December 26, 2013, and revealed an H. Pylori exposure value of 7.9 (Doc. 101-2 at ¶ 29; *see* Doc. 101-1 at 27).

Johnson saw Dr. Shah on December 31, 2013 for another follow-up examination, and reported complaints of diarrhea and constipation (Doc. 101-2 at ¶ 30; *see* Doc. 101-1 at 28). Dr. Shah performed a physical examination that was unremarkable (*Id.*). He noted that although Johnson's blood testing indicated a positive result for H. Pylori, there was a decrease in the exposure value (*Id.*). Dr. Shah determined Johnson was suffering from GERD and prescribed Reglan for treatment of his heartburn (*Id.*).

During a subsequent examination on February 10, 2014 during which Johnson reported complaints of stomach pain in his mid-epigastric area, Dr. Shah's assessment was "questionable irritable bowel syndrome" (Doc. 101-3 at 25, Doc. 101-2 at ¶ 33; *see* Doc. 101-1 at 31). He continued Johnson on Reglan and ordered that he take Imodium capsules (*Id.*). Dr. Shah did not examine or otherwise evaluate Johnson after February 10, 2014 (Doc. 101-2 at ¶ 33).

Johnson was transferred from Pinckneyville to Lawrence Correctional Center on October 29, 2014, where he continued to complain of abdominal pain (Doc. 101-2 at ¶¶ 40-42, 44). The parties dispute whether Johnson received an additional round of antibiotics to treat his H. Pylori infection in 2015 (Doc. 101-6 at 15; Doc. 101-2 at ¶¶ 44-46).

### *Plaintiff's Requests for Medical Care*

From June 2013 to October 2013, Johnson submitted numerous nurse sick call requests for medical treatment to address his stomach ailments (*See* Doc. 23 at 6-8, 10)[4]. Despite an

---

[4] Plaintiff cites to his Amended Complaint to support these assertions. Although Plaintiff's Amended Complaint was not verified, Defendants do not object to Plaintiff's factual assertions, so they will be considered.

IDOC Directive that requires inmates to be seen within twenty-four hours of submitting a nurse sick call request, Johnson's requests often went unanswered (Deposition of Roderick Matticks, Doc. 115-4, p. 24; Deposition of Christine Brown, Doc. 101-5, p. 10; Doc. 23 at 6-8, 10). On at least three occasions during "medline," Johnson was informed by nurses Long, Stewart, and Ferrari that he could only cite one complaint at nurse sick call[5] (Doc. 23 at 13).

On July 24, 2013, Johnson sent a letter to Defendant Christine Brown, the Health Care Unit Administrator at Pinckneyville, asking for medical attention to address various symptoms, including bloating, gastrointestinal distress, abdominal pain and cramping, and diarrhea (Declaration of Christine Brown, Doc. 110-1, ¶ 52; *see* Doc. 1-1, pp. 13-17). Johnson explained that his sick call requests and requests for evaluation and treatment were being ignored (Doc. 1-1 at 13-17). Brown provided a written response to Johnson's letter on July 29, 2013, in which she indicated that she had reviewed his file, and advised Johnson to stop playing basketball and to submit a nurse sick call and be evaluated if he is having "all these issues" (Doc. 1-1 at 18). Brown also noted that Johnson was seen on July 16, 2013 (*Id.*).

Johnson sent Brown another letter on August 7, 2013, in reply to Brown's response (Doc. 1-1 at 26-27). In his August 7, 2013 letter, Johnson indicated that he had not played basketball recently and further explained the issues he was having with nurse sick call (*Id.*). Johnson reiterated his request for an evaluation by a physician or nurse other than Dr. Dr. Shah, who could provide him an unbiased health diagnosis (*Id.*). Brown contends that she never received this letter (Doc. 110-1 at ¶ 59). Johnson maintains that he submitted his August 7, 2013 letter in the same manner as he submitted his July 24, 2013 letter (Doc. 101-6 at 9).

---

[5] Defendants object to this statement by Plaintiff on the basis of hearsay. The Court sustains Defendants' objection and will not consider it in its ruling. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible at trial).

Johnson also submitted a grievance on August 7, 2013, indicating that his "health and safety [was] at risk" due to the food products at Pinckneyville (Doc. 1-1 at 9). He indicated that he was suffering from high blood pressure, diarrhea, daily stomach pains, bloating, constipation, and gastrointestinal distress (*Id.*). Johnson requested a soy-free diet and sought compensation for his pain and suffering (*Id.*). Plaintiff's counselor responded to this grievance on August 14, 2013, indicating that:

> Per the HCUA: You did not complain of abdominal pain until 7/16/13. The chart reflects that you have not complained since. Eating soy did not cause your high blood pressure. You have been treated for high blood pressure for years. Healthcare does not order religious or soy free diets unless it is medically necessary. Soy is found in almost everything we eat. It is almost impossible to be soy free.

(*Id.*). Brown acknowledges that she was contacted in regards to this grievance, reviewed Johnson's chart, and provided the above information to the counselor (*See id.*). She also acknowledges that she was contacted in regards to a September 8, 2013 grievance filed by Johnson concerning the same health issues and complaints, and again provided information to the counselor (*See* Doc. 1-1 at 38). The counselor responded to Johnson's September 8, 2013 grievance on October 15, 2013, indicating that "per the HCUA," his medical conditions are being treated appropriately and according to lab work completed on 10/1/2013, he was not allergic to soy (*Id.*).

It is undisputed that Brown can put an inmate on the doctor's call line or nurse sick call to be seen (Doc. 101-5 at 8). It is also undisputed that Brown never referred or scheduled Johnson to be seen by a physician or nurse (Doc. 101-6 at 10).

**Discussion**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In determining a summary judgment motion, the district Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

*Count One – Deliberate Indifference*

The Eighth Amendment protects inmates from cruel and unusual punishment. U.S. Const., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). As the Supreme Court has recognized, "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, the plaintiff must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted). The following circumstances constitute a serious

medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

To satisfy the second element, an inmate must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

Here, Defendants do not dispute the fact that Plaintiff's medical condition meets the objective requirement of a "serious medical need." Accordingly, the Court will only consider whether Defendants acted with deliberate indifference to Plaintiff's serious medical needs.

**Dr. Vipin Dr. Shah**

Plaintiff's deliberate indifference claim against Dr. Shah is premised on Dr. Shah's purported failure to adequately and timely address Plaintiff's abdominal complaints and associated symptoms, causing him unnecessary and prolonged pain and suffering. It is well settled that the Eighth Amendment does not demand "specific care" or the "best care possible"; rather, it requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Indeed, the Seventh Circuit recognizes that "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment was "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Greeno*, 414 F.3d at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). Making such a showing is not easy as "[a] medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles*, 771 F.3d at 409 (quoting *Sain v Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (other quotation omitted)).

Viewing the evidence in Plaintiff's favor, as the Court must do at this stage of the proceedings, there is clearly a question of fact as to whether Dr. Shah exercised his professional judgment in addressing Johnson's complaints of abdominal pain prior to his H. Pylori diagnosis in October 2013. In particular, Johnson has presented evidence from which a reasonable jury could conclude that Dr. Shah failed to adequately address and assess his complaints of stomach pain on multiple occasions (May 7, 2013, June 18, 2013, and July 30, 2013). Indeed, despite

repeated complaints of stomach pain, Plaintiff was not diagnosed with and treated for H. Pylori until October 2013 – a delay of approximately five months. This delay is significant and sufficient to overcome Dr. Shah's motion for summary judgment. *See Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) ("A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."). That Johnson continued to gain weight during this time (weighing 171 pounds on May 7, 2013 compared to 179 pounds on September 12, 2013), is not compelling given Johnson's primary complaint that he suffered from prolonged, severe abdominal pain. Thus, Plaintiff will be allowed to proceed on his claim of deliberate indifference against this Defendant (Count One).

**Wexford Health Sources, Inc.**

Johnson contends that Defendant Wexford instituted or maintained unconstitutional policies or practices that significantly delayed his diagnosis and treatment for H. Pylori. In his Amended Complaint, Johnson alleges that Wexford's policies of requiring a $5.00 co-payment for healthcare visits, requiring inmates to see a nurse three times before being referred to a medical doctor, and only being allowed to address one complaint per healthcare visit, are unconstitutional. Based on his opposition briefing and the evidence in the record, it appears that Johnson now seeks to amend his allegations. Specifically, Johnson now asserts that Defendant Wexford was deliberately indifferent in failing to follow administrative directive requirements and maintaining a practice of refusing to see inmates for more than one ailment at a time[6].

Where a private corporation has contracted to provide essential government services, such as health care for prisoners, the private corporation cannot be held liable under § 1983

---

[6] The Court will consider Plaintiff's arguments despite the change in his theory as "the complaint does not fix the plaintiff's rights but may be amended at any time to conform to the evidence." *Winger v. Winger*, 82 F.3d 140, 144 (7th Cir. 1996). Moreover, Defendant was granted leave to file a reply to Plaintiff's response brief.

unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Accordingly, in order for Johnson to recover from Wexford, he must offer evidence that his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy. *Shields*, 746 F.3d at 796. Additionally, he must also show that policymakers were aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect him. *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009). Finally, a policy or practice "must be the 'direct cause' or 'moving force' behind the constitutional violation." *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (internal citations omitted).

Johnson has presented evidence that Wexford is required, pursuant to an IDOC Directive, to address nurse sick call requests within twenty-four hours of receipt. He has also presented evidence indicating that he was not always seen within twenty-four hours of submitting a request. The record, however, is devoid of any indication that Wexford's failure to adhere to the relevant IDOC Directive was caused by a policy, custom, or practice of Wexford, as opposed to intermittent failings of the system. Relatedly, the failure of Wexford to adhere to IDOC directives does not, in and of itself, demonstrate an unconstitutional practice. Finally, there is insufficient evidence for a reasonable jury to conclude that Wexford's failure to always abide by the "twenty-four hour policy" was the "moving force" behind Plaintiff's claim of delayed care for his H. Pylori as Plaintiff was regularly seen by medical personnel during the relevant time period.

Plaintiff also claims that Wexford employed an unconstitutional policy of limiting healthcare visits to one medical issue. The only competent evidence provided by Plaintiff to support his contention relates to statements allegedly made by Defendant Dr. Shah that he could only treat one ailment at a time. This evidence relates only to Defendant Dr. Shah and is insufficient to support a policy claim against Wexford as "[s]uch isolated incidents do not add up to a pattern of behavior that would support an inference of a custom or policy, as required to find that Wexford as an institution/corporation was deliberately indifferent" to Plaintiff's needs. *Shields*, 746 F.3d at 796. For these reasons, Defendant Wexford's Motion for Summary Judgment is granted.

**Christine Brown**

Defendant Brown contends she is entitled to summary judgment because she responded appropriately to Plaintiff's July 24, 2013 letter and subsequent grievances. Brown also argues that because medical staff was made aware of Plaintiff's requests and he was seen by medical staff throughout the relevant time period, there is nothing she could do with regard to his treatment. The Court agrees.

Liability under § 1983 is predicated on a defendant's personal involvement in the alleged constitutional violation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (citations omitted). "This means that to recover damages against a prison official acting in a supervisory role, a § 1983 plaintiff may not rely on a theory of respondeat superior and must instead allege that the defendant, through his or her own conduct, has violated the Constitution." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). To be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (quoting *Johnson v. Snyder*, 444 F.3d 579, 583 (7th

Cir. 2006) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). "An inmate's correspondence to a prison administrator may … establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez*, 792 F.3d at 781-82.

Where an official is supervising medical personnel, that professional "will generally be justified in believing that the prisoner is in capable hands," if the prison is under the care of medical experts. *Arnett*, 658 F.3d at 755. "However, nonmedical officials can be chargeable with deliberate indifference where they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Id.* (internal quotations and alterations omitted). In order to show liability on this basis, "[t]he plaintiff must demonstrate that the communication, in its content and manner of transmissions, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety," and, once alerted of the risk, "the refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Id.* at 755-56 (internal quotations and alterations omitted).

Brown received a letter from Johnson on July 24, 2013, seeking medical attention for various ailments, including his abdominal complaints. She responded to Johnson's letter on July 29, 2013, indicating that she had reviewed his file and advised him to submit a nurse sick call request. She also noted that Johnson was examined on July 16, 2013, and that the nurses who had examined him did not "feel a referral [to a physician] was indicated at that time" (Doc. 1-1 at 18). Although Brown did not refer Johnson to be seen by a physician, the Court finds that she acted reasonably in responding to Plaintiff's letter by reviewing his medical file and relying on the treatment decisions of his medical providers.

Similarly although Brown did not respond to Johnson's August 7, 2013 letter, she provided information to his counselor in response to a grievance Johnson submitted on the same date. In both the letter and the grievance, Johnson lodged complaints about his inadequate medical treatment. In providing information to Johnson's counselor to respond to his grievance, Brown reviewed Johnson's chart and addressed his concerns regarding his abdominal issues and hypertension, indicating that he has been treated for high blood pressure for years and he was seen on July 16, 2013 for abdominal pain, but has not complained of the same issue since that time. Again, although Brown did not refer Plaintiff to be seen by a physician, she acted reasonably by reviewing Plaintiff's medical file and relying on the treatment decisions of his medical providers.

Likewise, Brown's response to Johnson's September 8, 2013 grievance does not demonstrate deliberate indifference. In this grievance, Johnson complained that the soy food products being served at Pinckneyville caused him to suffer a number of "side effects." He requested a non-soy diet and to receive "adequate treatment and medications" (Doc. 1-1 at 38). Brown reviewed Johnson's chart and provided information to his counselor concerning his complaints. Brown indicated that his medical conditions were being treated appropriately and advised that Plaintiff is not allergic to soy. Once again, While Brown Defendant did not refer Johnson to a physician, her actions do not amount to deliberate indifference. At the time Johnson's grievance was received by the counselor, he had recently been seen by Nurse Practitioner Rector concerning issues with food, headaches, and fatigue. Rector ordered a Thyroid test and performed a follow-up exam on September 12, 2013. On these facts, and as a

matter of law, Brown acted reasonably in relying on the decisions of Plaintiff's treatment providers. Defendant Brown's Motion for Summary Judgment is granted[7].

### *Count Three – State Law Breach of Contract*

In Count Three of his Amended Complaint, Johnson asserts a state law breach of contract claim against Defendant Wexford. He alleges that Wexford breached its contractual duty to provide adequate medical services to inmates held in the IDOC and he asserts rights as third-party beneficiary.

Wexford argues that it has not breached its contractual duty and, in any event, that Johnson has no enforceable rights under its contact with the IDOC. Under Illinois law, an individual is only considered a third-party beneficiary "when the benefit to him is intended." *Golden v. Barenborg*, 53 F.3d 866, 870 (7th Cir. 1995). If the benefit is merely incidental, the third person has no right of recovery. *Id.* In this instance, Wexford and the IDOC expressly disavowed the creation of any third-party beneficiaries in their contract (*See* Doc. 102). Johnson has not submitted any evidence or argument to the contrary. As such, Defendant Wexford is entitled to judgment as a matter of law on Plaintiff's state law breach of contract claim (Count Three).

## **Conclusion**

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants Dr. Shah and Wexford (Doc. 100) is **DENIED** as to Defendant Dr. Shah, but **GRANTED** as to Defendant Wexford, and the Motion for Summary Judgment filed by Defendant Brown (Doc. 109) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment against Plaintiff

---

[7] The Court need not consider Defendant Brown's qualified immunity argument as it finds that Defendant did not violate Plaintiff's constitutional rights.

Michael Johnson and in favor of Defendants Wexford Health Sources, Inc. and Christine Brown at the close of this case.

This matter shall proceed against Defendant Vipin Dr. Shah on Count One.

**IT IS SO ORDERED.**

**DATED:  February 6, 2018**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**
